## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KEITH ROMOND CHARLESTON,

       Petitioner,

v.

JEFFREY WOODS,

       Respondent.

_____/

Case No. 4:16-12696
HONORABLE TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

## OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS; (2) A CERTIFICATE OF APPEALABILITY; AND (3) LEAVE TO APPEAL *IN FORMA PAUPERIS*

Keith Charleston, ("petitioner"), confined at the Chippewa Correctional Facility in Kincheloe, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a), felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b. For the reasons stated below, the application for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

## I. FACTUAL BACKGROUND

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction,

which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).

*See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> This case arises from the murder of Charles Wall in Detroit, Michigan.
>
> *****************************************************************
> We conclude sufficient evidence of premeditation and deliberation justified submitting the charge of first-degree premeditated murder to the jury and for the jury to convict defendant. Lawrence Helzer and defendant had a previous relationship: defendant regularly sold cocaine to Helzer. On the day of the shooting death, defendant and another man confronted Helzer regarding money Helzer allegedly owed defendant. Defendant and his companion assaulted Helzer, knocking him to the ground. Wall came out of the apartment and pulled defendant off Helzer; defendant and his companion began to hit Wall. Helzer retrieved a sword from his apartment, and he and Wall chased defendant and the man with him. Wall and Helzer then went back into their apartment building. Defendant later called Helzer and told him that if he did not come outside, he would never be able to go back inside again. Subsequently, Helzer looked out a window and saw defendant riding a bicycle. Defendant was holding what looked like a pistol. Helzer could not see defendant at the moment he heard the first of five gunshots. After the shooting, Helzer looked through the door of the apartment building and saw Wall lying on the ground outside. Helzer testified defendant was no longer present when he found Wall's body.
>
> Karla Nash, who witnessed the shooting, testified the man who did it ran away. Nash saw two men standing outside but did not see anything in either man's hands. She testified that the man who fell to the ground had his hands to his side during the encounter.
>
> According to defendant's statement to the police, defendant retrieved a gun from underneath logs. Defendant went back to the apartment and talked to Helzer on the telephone. Wall came out of the apartment building and started to walk toward defendant. Wall reached "in his back area," which made defendant think that Wall had something in his possession. Defendant shot Wall three or four times because he was defending himself.

*People v. Charleston,* No. 316771, 2015 WL 1119720, at * 1, 5 (Mich. Ct. App. Mar. 12, 2015).

Petitioner's conviction was affirmed. *Id., lv. Den.* 498 Mich. 884, 869 N.W.2d 587 (2015). Petitioner seeks a writ of habeas corpus on the following grounds:

> I. Petitioner's statement was unconstitutionally obtained as his intoxication and lack of sleep prevented a knowing and intelligent waiver of his *Miranda* rights, and the trial court erred in declining to suppress his statement.

> II. Petitioner's conviction for premeditated murder must be reversed where (1) there was insufficient evidence of premeditation and deliberation; (2) the prosecution failed to present sufficient evidence to disprove self-defense beyond a reasonable doubt.

> III. Petitioner's guaranteed federal and state constitutional rights were violated under the United States Constitution 6th and 14th Amendments; the Michigan Constitution of 1963, Article 1 § 17 and 20, when trial counsel was ineffective for (1) failing to do an adequate and thorough investigation; (2) failing to address the illegal warrantless entry into his mother's home to arrest petitioner on outstanding traffic tickets; and (3) failing to challenge the unreasonable delay in providing probable cause hearing where petitioner was arrested without a warrant on December 26, 2012, and wasn't arraigned until December 29, 2012.

## II. LEGAL STANDARD

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## III. ANALYSIS

### A. The confession claim

Petitioner contends that the trial judge erred in denying his motion to suppress because he did not voluntarily speak with the police nor did he knowingly, intelligently, or voluntarily waive his *Miranda* rights. Petitioner claims that he did

4

not knowingly, intelligently or voluntarily waive his *Miranda* rights and that his confession was involuntary because he was intoxicated on alcohol and marijuana and was sleep-deprived at the time he made his statement.

The Court notes that the Michigan Court of Appeals reviewed and rejected the portion of petitioner's claim that he did not knowingly and intelligently waive his *Miranda* rights for plain error because petitioner failed to preserve this issue in the trial court in that petitioner only argued in his motion to suppress that his statement was involuntary. *People v. Charleston,* 2015 WL 1119720, at * 1.

In *Fleming v. Metrish,* 556 F.3d 520, 532 (6th Cir. 2009), a panel of the Sixth Circuit held that the AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted claim. In a subsequent decision, the Sixth Circuit held that that plain-error review is not equivalent to adjudication on the merits, so as to trigger AEDPA deference. *See Frazier v. Jenkins*, 770 F. 3d 485, 496 n. 5 (6th Cir. 2014). The Sixth Circuit noted that "the approaches of *Fleming* and *Frazier* are in direct conflict." *Trimble v. Bobby*, 804 F.3d 767, 777 (6th Cir. 2015). When confronted by conflicting holdings of the Sixth Circuit, this Court must follow the earlier panel's holding until it is overruled by the United States Supreme Court or by the Sixth Circuit sitting *en banc*. See *Darrah v. City of Oak Park,* 255 F.3d 301, 310 (6th Cir. 2001). This Court believes that the AEDPA's deferential standard of review applies to the *Miranda* waiver portion of petitioner's claim even though this portion of the claim was reviewed only for plain error.[1]

---

[1]  Respondent argues that this Court should reject petitioner's *Miranda* claim because petitioner failed to preserve the claim at the trial level and the Michigan Court of Appeals relied on this failure

The Michigan Court of Appeals rejected petitioner's claim:

A *Walker*[2] hearing was held on defendant's motion to suppress on February 22, 2013. Detroit Police Officer Derrick Maye testified that he interviewed defendant on December 26, 2012, at approximately 8:00 p.m. Defendant was not deprived of any food or water, and defendant had a carton of juice with him during the interview. Officer Maye explained that the Second Precinct where the interview occurred had scheduled feeding times. The scheduled feeding time on that day was 6:00 p.m. Defendant did not tell Officer Maye that he was hungry during the interview. Defendant was 29 years old at the time of the interview and had completed the ninth grade. Officer Maye provided defendant with a notice of constitutional rights form, read the form aloud to defendant, and gave defendant the opportunity to read it himself. Defendant did not slur his speech. Defendant did not appear to be drunk or tired. His eyes were not bloodshot. Defendant also did not appear confused or disoriented. Defendant was coherent and was able to understand the conversation. During the interview, defendant told Officer Maye that he was living in Atlanta at the time of the incident. Defendant eventually stated that he lived on the street where the incident occurred.

Defendant also testified at the hearing. According to defendant, he was intoxicated at the time of the incident. Defendant explained that he had consumed six or seven daiquiris, which contain vodka, before the interview. He began drinking at approximately 12:30 a.m. or 1:00 a.m. on December 26, 2012. Defendant also smoked four or five blunts of "Cush," which he explained is strong marijuana; however, defendant explained that he smoked one blunt and had two daiquiris during the daytime on December 26, 2012. Defendant smoked the other blunts and drank the other daiquiris during the early morning hours of December 26, 2012. Defendant went to sleep on December 26, 2012, at 2:00 a.m. and woke up at approximately noon. Defendant did not remember the police interview at the time of the motion hearing or Officer Maye's asking him, "[D]o you know who this is?" Defendant also explained that on the day of his arrest, the police came to the house. His girlfriend Lida Love, defendant's niece, and defendant's nephew were in the house. Defendant was trying to find something in the closet when he was arrested. Defendant asked the police officers why they came to the house. The police officers told

---

to preserve the *Miranda* claim. As the Michigan Court of Appeals acknowledged even as they defaulted petitioner's *Miranda* claim, the analysis for determining whether a defendant voluntarily confessed to a crime is similar to an inquiry concerning whether a defendant knowingly, intelligently, and voluntarily waived his or her *Miranda* rights. Because the Court is required to consider the same factors to determine whether petitioner voluntarily confessed and whether he voluntarily waived his *Miranda* rights, it is easier for this Court to address the merits of both portions of petitioner's first claim.

[2] *People v. Walker*, 374 Mich. 331; 132 NW2d 87 (1965) (footnote original).

defendant that they had a warrant based on defendant's outstanding traffic tickets.

Defendant's mother, Linda Moore, also testified at the hearing. Moore explained that on December 26, 2012, police officers entered her home without her invitation. She also testified that the officers did not show her an arrest warrant. But Moore also explained that she was not at home at the time of defendant's arrest because she was at work. Defendant was awake when Moore left for work, and defendant had been drinking vodka, gin, and beer the entire day of his arrest. Defendant also smoked approximately two marijuana cigarettes. Moore explained that defendant was intoxicated at the time of his arrest, and she knew this even though she left for work at 8:00 a.m.

The trial court ruled that there was no indication that defendant was intoxicated during the interview with Officer Maye and based its decision on its observations from watching the first 20 minutes of the videotaped recording of defendant's interview by Officer Maye. The trial court noted that it had considered defendant's answers to Officer Maye's questions, as well as how defendant gave his answers. The court observed that defendant read and initialed the *Miranda* waiver form. The trial court also noted that defendant appeared to remember certain details of the interrogation while forgetting others. The court also reasoned that defendant had ingested most of the alcohol on the day before he was arrested. The court pointed out that defendant's statement to the police was cogent and that defendant slept several hours on the day of the interview. Finally, the court noted that Moore was not with defendant most of the day and could not have observed whether defendant consumed alcohol. Thus, the court ruled that defendant's statement was voluntary and denied defendant's motion to suppress.

Defendant's waiver of his *Miranda* rights was knowing and intelligent. According to Officer Maye, defendant did not appear to be drunk or tired at the time of the interrogation. Defendant did not slur his speech. His eyes were not bloodshot. Defendant also did not appear confused or disoriented, and he was coherent and was able to understand the conversation. Officer Maye was able to reason with defendant. Although defendant consumed alcohol and marijuana before the interview, defendant consumed most of the marijuana and alcohol in the early morning hours of the day of the interview. Officer Maye read a constitutional rights form to defendant and gave defendant the opportunity to read it himself. Although Moore testified that defendant was intoxicated, she had not been home for the majority of the day of defendant's arrest. Defendant stated at the hearing that he could not remember the interview, but he later stated that he remembered certain details of the interview. From these facts we conclude as did the trial court that defendant knowingly and intelligently waived his rights.

In addition, although defendant does not raise the issue of whether he voluntarily confessed to shooting Wall and also does not discuss in his brief on appeal whether his waiver of his *Miranda* rights was voluntary, we hold that defendant's waiver of his *Miranda* rights and his statement to the police were voluntary based on the totality of the circumstances. At the time of the interview, defendant was 29 years old and had completed the ninth grade. Defendant was not deprived of any food or water during the interview. Defendant had a juice carton in his possession at the time of the interview. The scheduled feeding time on that day would have been 6:00 p.m., and defendant was interviewed around 8:00 p.m. Defendant slept for at least eight hours the night before he was interviewed. As discussed above, although defendant testified at the hearing that he had consumed alcohol and marijuana on the day of his police interview, there is no indication that he was intoxicated when he waived his *Miranda* rights and provided a statement to the police. There is no indication that there was a prolonged delay between defendant's arrest and the interview or that the interview was unreasonably long. Thus, the totality of the circumstances surrounding defendant's interview shows that defendant voluntarily waived his *Miranda* rights and gave the statement to the police.

*People v. Charleston*, 2015 WL 1119720, at * 2–3 (internal citations omitted).

In considering federal habeas petitions, a federal district court must presume the correctness of state court factual determinations, and a habeas petitioner may rebut this presumption only with clear and convincing evidence. *Bailey v. Mitchell*, 271 F. 3d 652, 656 (6th Cir. 2001); 28 U.S.C. § 2254(e)(1). Subsidiary factual questions in determining the voluntariness of a statement to police, such as whether the police engaged in intimidation tactics alleged by a habeas petitioner, are entitled to the presumption of correctness accorded to state court findings of fact. *Miller v. Fenton*, 474 U.S. 104, 112 (1985). Likewise, whether a defendant understood his or her *Miranda* rights is a question of fact underlying the question of whether his waiver of those rights was knowing and intelligent. Thus, on federal habeas review, a federal court has to presume that the state court's factual finding

that a defendant fully understood what was being said and asked of him was correct unless the petitioner shows otherwise by clear and convincing evidence. *Williams v. Jones,* 117 F. App'x. 406, 412 (6th Cir. 2004); *See also Terry v. Bock,* 208 F. Supp. 2d 780, 789 (E.D. Mich. 2002).

A defendant's waiver of his *Miranda* rights is considered valid if it is voluntary, knowing, and intelligent. *Miranda v. Arizona*, 384 U.S. 436, 444, 475 (1966). Coercive police activity is a necessary predicate to finding that a defendant's waiver of his *Miranda* rights was involuntary. *Colorado v. Connelly,* 479 U.S. 157, 167, 169-70 (1986). A defendant's deficient mental condition, by itself, is insufficient to render a waiver involuntary. *Id.* at 164-65. "[W]hile mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry." *Connelly*, 479 U.S. at 165.

Likewise, in determining whether a confession is voluntary, the ultimate question for a court is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton,* 474 U.S. at 112. These circumstances include:

1. police coercion (a "crucial element");
2. the length of interrogation;
3. the location of interrogation;
4. the continuity of the interrogation;
5. the suspect's maturity;
6. the suspect's education;
7. the suspect's physical condition and mental health; and
8. whether the suspect was advised of his or her *Miranda* Rights.

*Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).

All of the factors involved in the giving of the statement should be closely scrutinized. *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961). However, without coercive police activity, a confession should not be deemed involuntary. *Colorado v. Connelly,* 479 U.S. at 167.

Petitioner's primary contention is that he did not knowingly or intelligently waive his Fifth Amendment rights or voluntarily speak with the police because he was intoxicated. Petitioner testified at the *Walker* hearing that he was intoxicated at the time of his arrest and at the time of his subsequent interrogation. However, Officer Maye testified that petitioner did not appear to be intoxicated or fatigued; did not slur his speech nor were his eyes bloodshot; did not look confused or disoriented. On the contrary, Officer Maye testified that Petitioner was coherent and able to understand the conversation. The trial court judge made a factual finding, both from the testimony and from watching, listening, and observing 20 minutes of Petitioner's demeanor and responses during the first portion of the videotaped interrogation, that there was no evidence that petitioner was intoxicated at the time he waived his *Miranda* rights and agreed to speak with Officer Maye. In this case, the denial of petitioner's motion to suppress his confession on the ground that it was involuntary due to petitioner's alleged intoxication does not warrant federal habeas relief where the trial court, as trier of fact, was required to decide between two differing accounts of what transpired and found from the testimony of Officer Maye and the videotaped recording of the interview that there

was no evidence that petitioner was intoxicated when he made his statement to the police. *See DePew v. Anderson*, 311 F. 3d 742, 753 (6th Cir. 2002). More importantly, petitioner does not allege, nor does he show, that the police engaged in any coercive activity. Because there is no evidence that petitioner was still intoxicated at the time that he spoke with the police, combined with the absence of any evidence of police coercion, petitioner cannot show that his confession should have been suppressed merely because he claimed to be intoxicated. *See Abela v. Martin,* 380 F. 3d 915, 928 (6th Cir. 2004).

Petitioner further contends that his confession should have been suppressed because he was sleep-deprived. Officer Maye testified that petitioner did not appear tired when he spoke to petitioner. Petitioner appeared to be lucid and coherent during the interview. Petitioner himself admitted that he slept eight hours the night before the police interrogation. The judge concluded after reviewing the videotape of the interview that petitioner appeared lucid. Although petitioner claimed to be sleep-deprived, in light of the fact that petitioner appeared lucid and coherent during the police interrogation, the judge's determination that petitioner's waiver of his *Miranda* rights was knowingly, intelligently, and voluntarily made was a reasonable determination that defeats petitioner's claim. See *United States v. Hampton*, 572 F. App'x. 430, 434-435 (6th Cir. 2014).

Based upon the totality of the circumstances in this case, it was objectively reasonable for the Michigan Court of Appeals to hold that petitioner's statement to the police was voluntary. *See McCalvin v. Yukins,* 444 F. 3d 713, 720 (6th Cir.

2006). Petitioner was advised of his *Miranda* rights. Petitioner was 29 years old and had completed the ninth grade. Petitioner was not denied food or water during the interview and had a juice carton in his possession at the time of the interview. Petitioner slept for at least eight hours the night before the police interview. There was no prolonged delay between petitioner's arrest and the interrogation or evidence that the interview took place over a long period of time. The judge made a factual determination that petitioner was not intoxicated or tired at the time of the interrogation. Under the deference required by the AEDPA, and given the factors supporting a finding that petitioner's confession was voluntary, the decision of the Michigan Court of Appeals in finding petitioner's confession to have been voluntary was a reasonable application of federal law. *McCalvin,* 444 F. 3d at 720. Petitioner is not entitled to relief on his first claim.

### B. The sufficiency of evidence claim

Petitioner next contends that there was insufficient evidence to convict him of first-degree murder because the prosecutor failed to prove the requisite elements of premeditation and deliberation and failed to disprove petitioner's self-defense claim.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v.*

*Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted) (emphasis in original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder

to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). The Court does not apply the reasonable doubt standard when determining the sufficiency of evidence on habeas review. *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

To constitute first-degree murder in Michigan, the state must establish that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002) (citing *People v. Schollaert*, 194 Mich. App. 158; 486 N.W.2d 312, 318 (1992)). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001) (citing *People v. Anderson*, 209 Mich. App. 527, 537; 531 N. W. 2d 780 (1995)). Premeditation may be established through evidence of the following factors:

1. the prior relationship of the parties;
2. the defendant's actions before the killing;
3. the circumstances of the killing itself;
4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer,* 383 F.3d 485, 491 (6th Cir. 2004); *Anderson*, 209 Mich. App. at 527.

Although the minimum time required under Michigan law to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *See Williams v. Jones,* 231 F. Supp. 2d 586, 594-

95 (E.D. Mich. 2002) (quoting *People v. Vail,* 393 Mich. 460, 469; 227 N.W. 2d 535 (1975)). "A few seconds between the antagonistic action between the defendant and the victim and the defendant's decision to murder the victim may be sufficient to create a jury question on the issue of premeditation." *Alder v. Burt,* 240 F. Supp. 2d 651, 663 (E.D. Mich. 2003). "[A]n opportunity for a 'second look' may occur in a matter of seconds, minutes, or hours, depending upon the totality of the circumstances surrounding the killing." *Johnson,* 159 F. Supp. 2d at 596 (quoting *People v. Berthiaume*, 59 Mich. App. 451, 456 (1975)). Premeditation and deliberation may be inferred from the type of weapon used and the location of the wounds inflicted. *See People v. Berry*, 198 Mich. App. 123, 128; 497 N. W. 2d 202 (1993). Use of a lethal weapon will support an inference of an intent to kill. *Johnson,* 159 F. Supp. 2d at 596 (citing *People v. Turner*, 62 Mich. App. 467, 470; 233 N.W. 2d 617 (1975)).

In the present case, there was sufficient evidence for a rational trier of fact to conclude that petitioner acted with premeditation and deliberation when he shot the victim. The evidence established that petitioner had been engaged in an argument and a physical altercation with the victim and the victim's friend prior to the shooting. Evidence that petitioner had a prior dispute with the victim or his friend supports a reasonable inference that the subsequent shooting was premeditated. *Scott,* 302 F.3d at 603. Petitioner's act of leaving the crime scene, retrieving a firearm and returning to the scene to shoot the victim also supports a finding of premeditation. *See People v. Taylor*, 133 Mich. App. 762, 764–65; 350

N.W.2d 318 (1984).  There was also testimony that petitioner fired multiple gunshots, which would also be sufficient to establish premeditation and deliberation. *See Thomas v. McKee*, 571 F. App'x. 403, 407 (6th Cir. 2014).  The fact that petitioner fled the scene afterwards also supports a finding of premeditation. *See e.g. Marsack v. Howes*, 300 F. Supp. 2d 483, 492 (E.D. Mich. 2004).  Finally, pursuant to the doctrine of transferred intent, petitioner could be liable for the victim's death, even if he intended to kill Mr. Helzer but killed the victim instead. *See People v. Youngblood,* 165 Mich. App. 381, 388; 418 N.W. 2d 472 (1988).

Petitioner further claims that the prosecutor failed to disprove petitioner's self-defense claim.

Petitioner's claim is non-cognizable on habeas review.  Under Michigan law, self-defense is an affirmative defense. *See People v. Dupree,* 486 Mich. 693, 704, 712; 788 N.W. 2d 399 (2010).  "An affirmative defense, like self-defense, 'admits the crime but seeks to excuse or justify its commission.  It does not negate specific elements of the crime.'" *People v. Reese*, 491 Mich. 127, 155, n. 76; 815 N.W.2d 85 (2012) (quoting *Dupree,* 486 Mich. at 704, n. 11).  Although under Michigan law the prosecutor is required to disprove a claim of self-defense, *See People v. Watts*, 61 Mich. App. 309, 311; 232 N.W.2d 396, 398 (1975), "[p]roof of the nonexistence of all affirmative defenses has never been constitutionally required...." *See Smith v. United States,* 133 S. Ct. 714, 719 (2013) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)).  The Supreme Court and the Court of Appeals for the Sixth Circuit have rejected the argument that the Constitution requires the prosecution to

disprove self-defense beyond a reasonable doubt. *See Gilmore v. Taylor*, 508 U.S. 333, 359 (1993) (Blackmun, J., dissenting) ("In those States in which self-defense is an affirmative defense to murder, the Constitution does not require that the prosecution disprove self-defense beyond a reasonable doubt"); *Martin v. Ohio*, 480 U.S. 228, 233-36 (1987); *see also Allen v. Redman*, 858 F.2d 1194, 1197 (6th Cir. 1988) (explaining that habeas review of sufficiency-of-the-evidence claims is limited to elements of the crimes as defined by state law and citing *Engle v. Isaac*, 456 U.S. 107 (1982), and *Duffy v. Foltz*, 804 F.2d 50 (6th Cir. 1986)). Therefore, "the due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." *Caldwell v. Russell,* 181 F.3d 731, 740 (6th Cir. 1999). As such, petitioner's claim that the prosecutor failed to disprove his affirmative defense is non-cognizable on habeas review. *Id.; Allen v. Redman,* 858 F.2d at 1200.

Moreover, even if this Court were to determine that petitioner's claim was cognizable, he would not be entitled to habeas relief. Under Michigan law, one acts lawfully in self-defense if he or she honestly and reasonably believes that he or she is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act. *Blanton v. Elo*, 186 F.3d 712, 713, n.1 (6th Cir. 1999) (citing *People v. Heflin*, 434 Mich. 482; 456 N.W. 2d 10 (1990)). To be lawful self-defense, the evidence must show that: (1) the defendant honestly and reasonably believed that he or she was in danger; (2) the danger feared was

death or serious bodily harm or imminent forcible sexual penetration; (3) the action taken appeared at the time to be immediately necessary; and (4) the defendant was not the initial aggressor. *See Johnigan v. Elo,* 207 F. Supp. 2d 599, 608-09 (E.D. Mich. 2002) (citing *People v. Barker*, 437 Mich. 161, 165; 468 N.W. 2d 492 (1991); *People v. Kemp*, 202 Mich. App. 318, 322; 508 N.W.2d 184 (1993); *People v. Deason*, 148 Mich. App. 27, 31; 384 N.W.2d 72 (1985)). Under Michigan law, a defendant is not entitled to use any more force than is necessary to defend himself. *Johnigan,* 207 F. Supp. 2d at 609 (citing *Kemp*, 202 Mich. App. at 322). "[T]he law of self-defense is based on necessity, and a killing or use of potentially lethal force will be condoned only when the killing or use of potentially lethal force was the only escape from death, serious bodily harm, or imminent forcible sexual penetration under the circumstances." *Johnigan,* 207 F. Supp. 2d at 609 (internal citation omitted).

In the present case, although there was evidence presented in support of petitioner's claim of self-defense, the prosecution also presented evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that the prosecutor had rebutted petitioner's self-defense claim.

When viewed in a light most favorable to the prosecution, the evidence showed that petitioner lacked any honest and reasonable belief that his life was in imminent danger or that he was in danger of great bodily harm. Further, the evidence showed that petitioner was the initial aggressor. It was petitioner who instigated the chain of events when he and his associate initially confronted Mr. Helzer over money owed to petitioner and began beating Mr. Helzer. When the

victim came to Mr. Helzer's aid, petitioner and his associate began beating him also. Although the victim may have chased after petitioner with a sword, when petitioner fled the crime scene, he was no longer in danger. Petitioner chose to retrieve a firearm and return to the crime scene to confront Mr. Helzer and the victim a second time. Petitioner was clearly the aggressor. Petitioner also used excessive force by firing several shots at the victim. There was no weapon recovered from the victim or the crime scene. Sufficient evidence was thus presented for a reasonable trier of fact to find beyond a reasonable doubt that petitioner committed all of the elements of first-degree murder and that his killing of the victim was not justified by a claim of self-defense. *See Friday v. Pitcher,* 200 F.Supp.2d 725, 743 (E.D. Mich. 2002).

Although there was evidence to support petitioner's self-defense claim and petitioner has given interpretations to the evidence that differ from the state court's interpretation of the evidence, "in light of the deference to be accorded to state-court fact-finding under § 2254(e), as well as the traditional deference accorded to the jury's resolution of disputed factual issues," petitioner is unable to show that the Michigan Court of Appeals unreasonably determined that the prosecutor disproved petitioner's self-defense claim. *See Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000).

### C. The ineffective assistance of trial counsel claim

Petitioner claims that he was denied the effective assistance of trial counsel. To show that he or she was denied the effective assistance of counsel under federal

constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his or her defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

### i. Petitioner's ineffective assistance of counsel claim in relation to evidence surrounding his intoxication level and drug use

Petitioner first claims that his trial counsel was ineffective for failing to investigate and present two witnesses, his mother Linda Moore, and his girlfriend, Atairalita Love, to testify to petitioner's intoxication and drug use on the day of the shooting, August 1, 2012. Petitioner claims that evidence of his intoxication and

drug usage would have negated the specific intent required for first-degree murder and would have bolstered his self-defense claim in that his intoxication would have made it reasonable for him to believe that the victim was pulling out a weapon, so as to justify the use of deadly force.

### a. Petitioner did not exhaust his available state court remedies for his ineffective assistance of counsel claim in relation to his level of intoxication and drug use

Respondent contends that petitioner's claim is unexhausted because it was never presented to the state courts. Petitioner argues that the claim was exhausted.

As a general rule, a state prisoner seeking federal habeas relief must first exhaust his or her available state court remedies before raising a claim in federal court. 28 U.S.C. § 2254(b) and (c); s*ee Picard v. Connor*, 404 U. S. 270, 275-78 (1971). The Antiterrorism and Effective Death Penalty Act (AEDPA) preserves the traditional exhaustion requirement, which mandates dismissal of a habeas petition containing claims that a petitioner has a right to raise in the state courts but has failed to do so. *See Welch v. Burke*, 49 F. Supp. 2d 992, 998 (E.D. Mich. 1999). Although exhaustion is not a jurisdictional matter, "it is a threshold question that must be resolved" before a federal court can reach the merits of any claim contained in a habeas petition. *See Wagner v. Smith,* 581 F.3d 410, 415 (6th Cir. 2009). A habeas petitioner has the burden of proving that he or she has exhausted his or her state court remedies. *See Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994).

In the present case, petitioner presented several ineffective assistance of counsel claims in the *pro se* Standard 4 Brief on Appeal that he filed in addition to

the brief filed by appellate counsel.[3]  Petitioner, however, never raised a claim that trial counsel was ineffective for failing to call his mother or girlfriend to testify about petitioner's intoxication on the day of the shooting.

A claim may be considered "fairly presented" only if the petitioner asserted both the factual and legal basis for his claim to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  The doctrine of exhaustion requires that the same claim under the same theory be presented to the state courts before it can be raised in a federal habeas petition. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).  "Even the same claim, if raised on different grounds, is not exhausted for the purpose of federal habeas review." *Rayner v. Mills*, 685 F.3d 631, 643 (6th Cir. 2012).

A habeas petitioner is required to present to the state courts "the same specific claims of ineffective assistance [of counsel] made out in the habeas petition." *Wyldes v. Hundley,* 69 F.3d 247, 253 (8th Cir. 1995) (quoting *Tippitt v. Lockhart,* 903 F.2d 552, 554 (8th Cir. 1990).  Because petitioner's claim that counsel was ineffective for failing to call his mother and girlfriend to testify about his intoxication on the day of the shooting is different than the ineffective assistance of counsel claims presented during petitioner's direct appeals process, this claim has not been fairly presented to the state courts. *See Caver v. Straub,* 349 F.3d 340, 346-47 (6th Cir. 2003) (*citing to Pillette v. Foltz,* 824 F.2d 494, 497 (6th Cir. 1987).

---

[3]  Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry,* 636 F. Supp. 2d 574, 594, n.6 (E.D. Mich. 2008).

### b. Petitioner's ineffective assistance of counsel claim in relation to his level of intoxication and drug use lacks merit

Although petitioner never properly exhausted this claim, a habeas petitioner's failure to exhaust his state court remedies does not deprive a federal court of its jurisdiction to consider the merits of the habeas petition. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). An unexhausted claim may be addressed if the unexhausted claim is without merit, such that addressing the claim would be efficient and would not offend the interest of federal-state comity. *Prather v. Rees,* 822 F.2d 1418, 1422 (6th Cir. 1987); *see also* 28 U.S.C. § 2254(b)(2) (habeas petition may be denied on the merits despite the failure to exhaust state court remedies). In these circumstances, a federal court should dismiss a non-federal or frivolous claim on the merits to save the state courts the useless review of meritless constitutional claims. *Cain v. Redman*, 947 F. 2d 817, 820 (6th Cir. 1991). Because petitioner's ineffective assistance of counsel claim lacks merit, in the interests of efficiency and justice, the court will address the claim, rather than dismiss the petition on exhaustion grounds. *See Welch v. Burke*, 49 F. Supp. 2d at 998.

Petitioner alleges that counsel was ineffective for failing to call either his mother or girlfriend to testify about his level of intoxication on the day of the shooting, so as to negate the specific intent required for first-degree murder and also to buttress either a self-defense or imperfect self-defense claim. Petitioner is not entitled to relief on his claim for several reasons.

First, petitioner failed to attach any affidavits from these witnesses to his petition for writ of habeas corpus concerning their proposed testimony and

willingness to testify on petitioner's behalf. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Petitioner has failed to attach any offer of proof or any affidavits sworn by the proposed witnesses concerning their willingness to testify on petitioner's behalf. In the absence of such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call these witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F.3d 551, 557 (6th Cir. 2007).[4]

Secondly, this Court notes that federal courts have rejected ineffective assistance of counsel claims based on an attorney's failure to raise an intoxication defense on the ground that the level of intoxication needed to negate specific intent is so high that the defense is rarely successful. *Evans v. Meyer*, 742 F.2d 371, 374 (7th Cir. 1984); *Wilen v. Wainwright*, 793 F. 2d 1190, 1194 (11th Cir. 1986); *See also Vinson v. McLemore,* 226 Fed. App'x. 582, 585 (6th Cir. 2007) (trial counsel's alleged conduct in relying on self-defense as defendant's only theory of acquittal, rather than investigating and pursuing voluntary intoxication defense, was reasonable trial strategy, and therefore was not ineffective assistance of counsel; trial counsel explained at evidentiary hearing he never used alcohol as a defense and had never known of it being successful and that jurors ordinarily did not like the argument

---

[4] Petitioner's mother Linda Moore did testify at the motion to suppress hearing, but only testified concerning petitioner's level of intoxication on the day of his arrest, December 26, 2012, to buttress his claim that he was too intoxicated to waive his Fifth Amendment rights. See Tr. 2/22/13, pp. 39-50. Ms. Moore offered no testimony concerning petitioner's intoxication on the date of the shooting.

that a defendant was too drunk to know what he was doing). Petitioner's actions on the day in question appeared purposeful enough that any intoxication defense was unlikely to succeed. (Moreover, a defense counsel's strategic decision to forego an intoxication defense in favor of a self-defense argument is reasonable because intoxication at a level sufficient to affect the ability to form intent would be inconsistent with self-defense, which requires purposeful action in responding to a perceived threat.)

Third, there is no allegation from petitioner that either his mother or girlfriend were present at the time of the shooting, nor did any of the witnesses testify to their presence. Without either person being present at the crime scene, their testimony concerning whether petitioner was justified in using deadly force would have been of limited value. A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F.3d 520, 527 (6th Cir. 2004) (internal quotation omitted). Because petitioner's mother and girlfriend were not present when the confrontation took place between petitioner and the victim, they could not have exonerated petitioner of the crime; thus, counsel was not ineffective in failing to call them as witnesses. *See, e.g., Pillette v. Berghuis,* 408 F. App'x. 873, 885-86 (6th Cir. 2010). Stated differently, counsel was not ineffective in failing to call petitioner's mother or girlfriend as witnesses because they could have offered only marginal support for petitioner's self-defense claim. *See Johnson v. Hofbauer,* 159 F. Supp. 2d at 607. To the extent Petitioner contends that counsel was ineffective for not calling his

mother and his girlfriend to testify as to his level of intoxication, counsel's strategic decision not to present such evidence was reasonable and not ineffective because such evidence would have undermined the self-defense argument. For the reasons stated above, petitioner is not entitled to relief on his first ineffective assistance of counsel claim.

### ii. Petitioner's ineffective assistance of counsel claim in relation to an alleged failure by his trial counsel to challenge the legality of Petitioner's arrest

Petitioner next claims that counsel was ineffective for failing to challenge the legality of his arrest. Petitioner claims that the police arrested him without a warrant at his mother's home, thus, his confession should have been suppressed as the fruit of an illegal arrest. To prove that counsel's failure to litigate a Fourth Amendment claim competently is the principal claim of ineffectiveness, a defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence, in order to demonstrate actual prejudice. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

As an initial matter, this Court notes that the Michigan Court of Appeals rejected petitioner's claim, in part, because although the felony warrant in this case was signed on December 28, 2012, Officer Maye testified that petitioner was arrested on December 26, 2012 on an outstanding homicide warrant and the detainee input sheet dated December 26, 2012 shows that it listed the numeric codes for five different holds or warrants related to petitioner's arrest. *People v.*

*Charleston*, 2015 WL 1119720, at * 7.  Thus, Petitioner fails to establish a factual basis for his claim.

In any event, even if the police did not possess a valid arrest warrant, they did have probable cause to arrest petitioner for the murder. *People v. Charleston*, 2015 WL 1119720, at * 7.  An arrest made at a suspect's home without a warrant, but with probable cause, does not render a suspect's continued detention unlawful and will not render any subsequent statements or confessions made by a suspect to the police at the police station after *Miranda* warnings have been given by the police inadmissible. *New York v. Harris,* 495 U.S. 14, 18 (1990).  Although the Supreme Court has held that a warrantless arrest inside of a home violates the Fourth Amendment, *See Payton v. New York,* 445 U.S 573 (1980), the Supreme Court in *Harris* noted that its holding in *Payton* was based on the "overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic." *New York v. Harris,* 495 U.S. at 17 (quoting *Payton,* 445 U.S. at 601).  The Supreme Court in *Harris* further ruled that nothing in its decision in *Payton* suggested that a warrantless arrest in the home renders a suspect's continued custody unlawful once he or she has been removed from the residence. *Id.*  The Supreme Court further noted that suppressing a defendant's statement given to the police after he or she had been removed from the home would not serve the purpose of the rule which makes a warrantless arrest in a home illegal, because the purpose of the warrant requirement in that situation is to protect the home. *New York v. Harris,* 495 U.S. at 20.

In the present case, even if petitioner was arrested at home without a warrant, it would not justify the suppression of the confession that petitioner subsequently made to the police at police headquarters after being advised of his *Miranda* rights. There was no basis for suppressing the confession on this ground and petitioner is unable to show that he was prejudiced by counsel's failure to challenge the admissibility of his confession on this basis.

### iii. Petitioner's ineffective assistance of counsel claim in relation to an alleged failure by counsel to challenge Petitioner's confession

Petitioner finally contends that counsel was ineffective for failing to seek the suppression of his confession based on the pre-arraignment delay in this case.

Petitioner's claim is based on the Supreme Court's decision in *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). *Riverside* was a civil rights case brought under 42 U.S.C. § 1983. The Supreme Court held that the federal constitution requires that a defendant be given a reasonably prompt probable cause determination, such as arraignment, following his arrest, and that a delay in arraignment greater than 48 hours after arrest is presumptively unreasonable. *See id.* at 55-58.

Even if there was an unreasonable delay in arraignment, petitioner cannot show a reasonable probability that a motion to suppress his statement on this basis would have been successful. *McLaughlin* was a civil rights action and thus did not consider the effect of pre-arraignment delay on the voluntariness of a statement made to the police. *See Davis v. Jones,* 306 F. App'x. 232, 236 (6th Cir. 2009). Indeed, the Supreme Court has explicitly declined to fashion an appropriate remedy

for a *McLaughlin* violation. S*ee Powell v. Nevada*, 511 U.S. 79, 84 (1994). The

Michigan courts have likewise held that suppression of a statement is not *per se*

required for a *McLaughlin* violation. *See People v. Manning*, 243 Mich. App. 615,

636-44; 624 N.W. 2d 746 (2000). Under both federal and Michigan law, any

unnecessary delay in having a defendant arraigned before a magistrate or other

judicial officer is insufficient, in and of itself, to justify the suppression of an

otherwise voluntary confession made during the period of the pre-arraignment

delay; instead, delay is only one of several relevant factors to be considered in

determining the voluntariness of a criminal defendant's statements. *See United*

*States v. Christopher,* 956 F.2d 536, 538 (6th Cir. 1991); *People v. Cipriano,* 431

Mich. 315, 319; 429 N.W. 2d 781 (1988). If the totality of the circumstances indicate

that a confession was voluntarily given, it should not be excluded solely because of

pre-arraignment delay. *Cipriano,* 431 Mich. at 319.

In this case, based on a review of the record, the totality of circumstances

indicate that petitioner's confession was voluntary—in spite of the pre-arraignment

delay—because there is no allegation that petitioner was not advised of his *Miranda*

warnings, and there is no evidence of intimidating police conduct, that the police

interview was coercive, or that petitioner was otherwise harassed or mistreated.

*Christopher,* 956 F. 2d at 539. Because the totality of the circumstances indicate

that petitioner's statement was voluntary, counsel was not ineffective for failing to

move to suppress petitioner's statements because of the pre-arraignment delay. *See*

*Davis,* 306 Fed. App'x. at 237-39 (counsel not ineffective for failing to seek

suppression of petitioner's statement based on a 96 hour delay between the arrest and arraignment when the other factors established that the statement was voluntary). Petitioner is not entitled to habeas relief on his third claim.

## IV. CONCLUSION

The Court denies the petition for writ of habeas corpus. The Court also denies a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate such a denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *see also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court denies petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. *See Dell v. Straub,* 194 F. Supp. 2d 629, 659

(E.D. Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Id.*

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

Dated: January 9, 2018

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on January 9, 2018.

s/A. Chubb
Case Manager